IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| PATRICIA HOLCOMB,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CITY OF KALISPELL and<br>OFFICERS,<br><br>　　　　　Defendants. | CV 24-104-M-KLD<br><br><br>ORDER |

Plaintiff Patricia Holcomb, who is proceeding pro se and in forma pauperis, brings this action against the City of Kalispell ("City") and four unnamed Kalispell police officers ("Officers"), alleging federal constitutional claims under 42 U.S.C. § 1983. The City has filed a motion for summary judgment on all claims (Doc. 20) and Holcomb responded with a motion to compel (Doc. 28). For the reasons set forth below, Holcomb's motion to compel is denied, the City's motion for summary judgment is granted, and this matter is dismissed.

## I.　Factual and Procedural Background

Holcomb filed this action on July 25, 2024. (Docs. 1; 2). The totality of the factual allegations in Holcomb's Complaint are as follows:

> Officers arrested me for protecting my business. The 1st time the male officer put cuffs on so tight turned my wrist [illegible] cutting circulation off.

1

> 2nd arrest they failed to stop thieves from robbing my business and allowed them to take my car and my gen[erator] and tools.
>
> Another incident I was removed from car and dog reamove [sic] for missing front plate.
>
> My business landlord sent in goon[s] to break in and lock me out I call 911 for help. Officer refused to come.

(Doc. 2 at 4, 6). Holcomb claims that the Officers violated her Fourth Amendment right to be free from excessive force and her Fourteenth Amendment right to equal protection. (Doc. 2 at 3, 4). Holcomb requests two million dollars in damages. (Doc. 2 at 4). Liberally construing the Complaint for purposes of screening under 28 U.S.C. § 1915, the Court determined that Holcomb provided "the bare minimum necessary to state a claim for relief against the unnamed officers under 42 U.S.C. § 1983 for excessive force" and was entitled to "have an opportunity to learn the officers' identity through discovery" so that the officers could be properly named and served. (Doc. 4 at 4-5).

In March 2025, the Court entered a scheduling order establishing a deadline of May 19, 2025, to amend the pleadings, a discovery deadline of August 18, 2025, and a motions deadline of September 29, 2025. (Doc. 10). The City timely filed the pending motion for summary judgment on September 29, 2025. (Doc. 20). Holcomb filed a combined response to the motion for summary judgment and motion to compel. (Doc. 28)

## II.   Legal Standards

## A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

When the non-moving party has the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party may satisfy its initial burden on summary judgment by showing that there is an absence of evidence in the record to support the nonmoving party's claims. *Celotox*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on

3

file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

**B.     Pro se Standard**

In general, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir. 1986). This means that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *Eaton v. Montana Silversmiths*, 2025 WL 253274, at *1 (D. Mont. Jan. 21, 2025) (quoting *King v. Atiyeh*, 814 F.2d 565, 576 (9th Cir. 1987)); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *American Association of Naturopathic Physicians v. Hayhurst,* 227 F.3d 1104, 1107-08 (9th Cir. 2000) (rejecting pro se defendant's

4

argument that he was excused from complying with procedural rules because they were "not something a pro se defendant can be expected to know"). Nevertheless, in the summary judgment context, courts are to construe pro se documents liberally and give pro se litigants the benefit of any doubt. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999).

### III.    Motion to Compel

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Evidence need not be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "[A] party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." *Estate of Petersen by and through Petersen v. Koelsch Senior Communities, LLC*, 2024 WL 3964989, at *1 (D. Mont. Aug. 28, 2024).

On August 5, 2025, Holcomb served discovery requests on the City that consisted of three requests for production, two of which are relevant here:

> Request for Production No. 1: I am requesting the photos and videos from the 1st arrest when I was taken to Kalispell Police Department the 1st time be produced my wrist was super white from the lack of circulation also produce the Body Cams from all police officers from the 2 arrest/contact regarding James and Angela.

> Request for Production No. 2: I am requesting the 911 call made by me when the goons broke in & changed the locks allowing Trigger LLC to violate the law & do an illegal eviction & please provide the zoning for that location at that time last week in April they allowed him to break the law! It was zone residential not commercial but police failed to assist.

(Doc. 30-2). Holcomb filed her motion to compel on November 12, 2025, in response to the City's summary judgment motion. (Doc. 28). She contends the City has not produced photos and videos from her first arrest when she was allegedly handcuffed too tightly. (Doc. 28 at 1-2). She asserts the City has also failed to produce a recording of the 911 call she claims to have made in April 2024 when her business landlord allegedly locked her out and allowed individuals to break in and steal her property. (Doc. 28 at 6-7, 8).

The City argues Holcomb's motion to compel should be denied as untimely or, alternatively, on the merits. With respect to timeliness, the City points to the Court's Scheduling Order which established a motions deadline of September 29, 2025. (Doc. 10 at 2). The Court advised the parties that "all dispositive motions, discovery motions, and motions in limine shall be filed by the date set forth in paragraph one"—September 29, 2025. (Doc. 10 at 6). The Court cautioned Holcomb "that if she does not comply with every provision of this order, this case may be dismissed." (Doc. 10 at 6). Because Holcomb did not file her motion to compel until November 12, 2025, the City argues the motion should be denied as untimely.

Although Holcomb's motion to compel is untimely and could be denied on that basis alone, the Court will nevertheless address her motion on the merits. The City argues Holcomb's motion to compel fails on the merits because the City reasonably and appropriately responded to her discovery requests. In response to Holcomb's first request for production of photographs and videos, the City provided a thumb drive with all videos related to the cases it had determined were likely the subject of Holcomb's complaint. (Doc. 30-2). The City represents that it "responded and provided physical copies of all relevant case reports, as well as body camera footage on a flash drive, and mailed the production to Holcomb at the Missoula County Detention Center," which is her current address of record. (Doc. 30 at 4, citing Doc. 30-2).

Holcomb contends the City has not produced photographs and videos from her first arrest when she was allegedly handcuffed too tightly. (Doc. 28 at 1-2). The City explains in response that it produced what video footage it had, and that despite a diligent search it was unable to locate any photographs. (Doc. 30 at 6-7). The City has included still shots from the video in its response brief, which show Holcomb's wrists immediately before and after the handcuff removal. (Doc. 30 at 6-7). By signing the response brief, the City's attorney has certified to the Court that to the best of her "knowledge, information and belief, formed after an inquiry reasonable under the circumstances" that the City's factual contentions have

evidentiary its legal contentions are warranted by existing law. Fed. R. Civ. P. 11(b). The record reflects that the City has produced the responsive materials currently in its possession, and Holcomb's motion to compel the production of videos and photographs is denied.

Holcomb also contends the City has not produced a 911 call during which she allegedly asked for police for assistance on the day she was locked out of her business by a third party. (Doc. 28 at 6). In its preliminary pretrial statement, the City explained that it had "scoured numerous case reports from Kalispell Police Department involving Plaintiff" and was unable to identify what incident Holcomb could have been referring to, and that "[w]ithout a date and/or more information from Plaintiff" it was unable to respond to the allegation. (Doc. 11 at 6). In its discovery response, the City similarly objected to Holcomb's request as "vague, ambiguous and unduly burdensome, given the City would be required to scour all 911 calls in search of the requested information. Without a date/and or more information from Plaintiff, the City is unable to respond." (Doc. 30-2). The City's objections and responses are well founded, and counsel has represented that the "City remains unaware of any documents in its possession, custody or control related to the alleged 911 call about the goons." (Doc. 30 at 9). Additionally, as discussed below, Holcomb's claim that the Officers failed to respond to her 911

8

call is barred by the public duty doctrine. The requested 911 call is thus immaterial, and Holcomb's motion to compel is denied.

Finally, Holcomb asserts that she "requested several times for information from KPD on names of officers involved & was always prevented the opportunity to discover the names." (Doc. 28 at 7). According to the City, however, it did not receive any discovery requests from Holcomb asking for the identity of the Officers. (Docs. 30 at 10; 30-1). Holcomb's written discovery requests do not ask for the names of the Officers. (Doc. 30-1). Nevertheless, the record reflects that the City voluntarily disclosed the identity of the officers involved in the incidents it believed Holcomb may have been referring to in her Complaint. Although the Complaint does not identify the date or locations of the incidents giving rise to Holcomb's claims, the City reviewed multiple case reports involving Holcomb and disclosed the names of the officers involved in those encounters in its April 21, 2025, preliminary pretrial statement. (Doc. 11 at 2-6, 13-15). The City also disclosed the names of potentially involved officers in its May 5, 2025, initial disclosures. (Doc. 12). The City served its preliminary pretrial statement and initial disclosures on Holcomb by U.S. Mail at her address on record with the Court at the time. (Docs. 11 at 17; 12 at 6). The City mailed Holcomb additional copies of its preliminary pretrial statement and initial disclosures on June 20, 2025. (Doc. 29-1). Accordingly, to the extent Holcomb moves to compel the City to provide the

9

names of the officers involved in the incidents giving rise to her Complaint, her motion is denied as moot.

## IV.    Motion for Summary Judgment

The City argues it is entitled to summary judgment on three grounds: (1) Holcomb fails to allege a viable claim for municipal liability against the City under § 1983; (1) Holcomb failed to timely amend her Complaint to identify the unknown Officers; and (3) even if Holcomb had amended the Complaint to name the individual Officers, her § 1983 claims fail as a matter of law because the undisputed facts demonstrate that no constitutional violations occurred.

### A.    City of Kalispell

42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (internal quotation marks omitted). It is well-settled that "municipalities and other local governmental units" such as cities are "persons" within the meaning of § 1983 and can be sued for damages. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held vicariously liable for the acts of its employees based on a respondeat superior theory. *See Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Instead, to impose liability on a municipality under § 1983 the plaintiff must "identify a

municipal 'policy' or 'custom' that caused the plaintiff's injury." *Brown*, 520 U.S. at 403 (citing *Monell*, 436 U.S. at 694, *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986)). The plaintiff must additionally allege facts to support a reasonable inference that the execution of a policy, custom, or practice of the municipality was the "moving force" that resulted in a constitutional deprivation. *Monell*, 436 U.S. at 691-92.

Thus, to prevail on a § 1983 claim against a municipality, a plaintiff must show that "(1) [s]he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).

Holcomb has not pled, much less provided evidence of, any viable claims against the City. She does not identify or any custom or policy that could possibly have been the moving force behind any alleged constitutional violations. Rather, she alleges her constitutional rights were violated during a few isolated encounters with law enforcement, which is not sufficient to establish a custom or policy. *A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636–37 (9th Cir. 2012) ("[A] bare allegation" that the conduct of individual officers "conformed to some unidentified policy or custom is insufficient" to state a claim for municipal

liability.); *Navarro v Block*, 72 F.3d 712, 714 (9th Cir. 1995) ("[R]andom acts or isolated events [are] insufficient to establish custom."). Even if Holcomb could identify a custom or policy, as discussed below the undisputed evidence demonstrates that she was not deprived of any constitutional rights. Thus, to the extend Holcomb seeks to hold the City liable under § 1983, her claims fail as a matter of law. The City is entitled to summary judgment.

B.     **Kalispell Police Officers**

To prevail on a § 1983 claim against individual police officers, "a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).

The City argues Holcomb's claims against the unnamed police Officers should be summarily dismissed because Holcomb failed to amend her Complaint to identify the Officers by name. Courts do not generally favor actions against unknown defendants. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999). When "the identity of alleged defendants" is not known before the filing of a complaint, however, the court may—as happened here—grant the plaintiff "the opportunity through discovery to identify the unknown defendants." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). A plaintiff "must diligently pursue

discovery to learn the identity of unnamed defendants." *Jones v. Goldburn*, 2021 WL 10352995, at *4 (C.D. Cal. Feb. 3, 2021) (citing *Gillespie*, 629 F.2d at 642-43).

In March 2025, the Court entered a scheduling order establishing a deadline of May 19, 2025, to amend the pleadings. (Doc. 10 at 2). As addressed above, the City disclosed the identity of the officers involved in its preliminary pretrial statement, which was filed on April 21, 2025, and was served on Holcomb at her address on record with the Court at that time. The City also disclosed the Officers' identities in its May 5, 2025, initial disclosures. (Doc. 12). Notwithstanding the City's disclosures, Holcomb did not amend her complaint to name the Officers or seek an extension of the May 19, 2025, deadline for doing so. Because Holcomb has failed to name or serve any of the Officers, her claims are properly dismissed on that basis.

Taking Holcomb's pro se status into consideration, however, the Court will address her claims on the merits. Even if Holcomb had amended the Complaint to name the individual Officers, her claims against them fail as a matter of law for the reasons outlined below.

Because the Complaint does not identify the date or locations of the incidents giving rise to Holcomb's claims, the City reviewed several case reports

13

involving Holcomb and identified three of the four incidents it believes Holcomb was likely referring to in her Complaint.

### 1.    First Incident[1]

The first alleged incident took place early in the morning on February 2, 2024, when Officer John McEntyre and Sargeant Andy Haag were dispatched to a verbal disturbance at a location in Kalispell. (Doc. 21 at ¶ 3). When the Officers arrived, Holcomb and two other individuals—James Sanford and Angela Waggener—were outside yelling at each other. (Doc. 21 at ¶ 3). Holcomb claimed that Sanford and Waggener needed to be removed from the property. (Doc. 21 at ¶ 4). Sanford and Waggener stated that they had been renting space on the property and would leave if they could get their personal property. (Doc. 21 at ¶¶ 5). Sargeant Haag suggested they leave until Holcomb calmed down. (Doc. 21 at ¶ 6). Shortly thereafter, Waggener reported that Holcomb had stolen her trailer. (Doc. 21 at ¶ 7). Officer McEntyre located Holcomb's truck with Waggener's trailer at a nearby gas station, and when he contacted Holcomb, she became confrontational, began shouting obscenities and was non-compliant with his commands. (Doc. 21 at ¶¶ 10-11). Officer McEntyre arrested Holcomb for disorderly conduct and

---

[1] The following facts are taken from the declaration of Officer John McEntyre. (Doc. 21 at ¶¶ 1-20, citing Doc. 21 at 8-10). Holcomb has not submitted any declarations, affidavits, or other evidence in support of her claims and in opposition to summary judgment.

obstructing a police officer, handcuffed her, and placed her in the back seat of the patrol car. (Doc. 21 at ¶ 11). During the 1.26 mile drive to the police station Holcomb complained that the handcuffs were too tight. (Doc. 21 at ¶¶ 14-15). Officer McEntyre pulled over and checked the handcuffs, and although they appeared to be on properly, he loosened the left handcuff due to Holcomb's complaints. (Doc. 21 at ¶ 16). Officer McEntyre removed the handcuffs within minutes after they arrived at the police station. (Doc. 21 at ¶ 17). Holcomb was subsequently found guilty of obstructing a police officer and disorderly conduct. (Doc. 21 at ¶ 19).

To the extent Holcomb claims that she was wrongfully arrested without probable cause for "protecting [her] business" in violation of her Fourth Amendment rights, the undisputed evidence shows otherwise. "A person commits the offense of disorderly conduct if the person knowingly disturbs the peace by: … (c) using threatening, profane or abusive language." Mont. Code Ann. § 45-8-101(1). "A person commits the offense of obstructing a peace officer or public servant if the person knowingly obstructs, impairs, or hinders the enforcement of criminal law, the preservation of peace, or the performance of a governmental function, including service of process." Mont. Code Ann. § 45-7-302(1). The undisputed facts set forth in Officer McEntyre's affidavit demonstrate that Holcomb disturbed the peace and used threatening, profane, or abusive language

15

which provided probable cause for her arrest. Additionally, because a judgment for Holcomb on a § 1983 claim challenging her arrest on Fourth Amendment grounds "would necessarily imply the invalidity of [her] conviction" for obstruction and disorderly conduct, such a claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-88 (1994). *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).

To the extent Holcomb claims Officer McEntyre "put cuffs on so tight turned my wrist [illegible] cutting circulation off" (Doc. 2 at 4) in violation of her Fourth Amendment right to be free of excessive force, the undisputed facts show otherwise. As set forth in Officer McEntyre's uncontradicted affidavit, McEntyre checked the fit of the handcuffs when he first put them on, and when Holcomb complained about them during the short drive to the police station he pulled over, rechecked that the handcuffs fit properly, and loosened one cuff. (Doc. 21 at ¶ 16). Officer McEntyre removed the handcuffs within minutes after they arrived at the police station, and Holcomb has not provided any evidence of injury caused by the handcuffs. (Doc. 21 at ¶ 18). On this undisputed record, Holcomb's excessive force claim fails as a matter of law. *See e.g. Reyes v. City of Santa Ana*, 832 F.App'x 487, 490-91 (9th Cir. 2020) ("Summary judgment on a tight handcuffing Fourth Amendment excessive force claim is merited if a plaintiff does not seek medical help or offer supporting documentary evidence" of injuries.).

16

2.    Second Incident[2]

The second alleged incident took place later in the morning on February 2, 2024, after Holcomb had been released from custody. This time, Officer Timothy Cronin was dispatched to a trespass complaint at Holcomb's business. (Doc. 21 at ¶ 21). When Officer Cronin arrived at the scene he met with James Sanford and Martin Kitzmiller, who Holcomb reported were trespassing on her property. (Doc. 21 at ¶ 22). Holcomb arrived at the scene and was screaming, yelling and acting irrationally. (Doc. 21 at ¶ 23). When Officer Cronin told Holcomb not to enter the building, she started screaming at him and he called for backup due to her erratic behavior. (Doc. 21 at ¶ 24). Holcomb's brother arrived on the scene and informed Officer Cronin that Sanford and Kitzmiller lived in the building and had permission to continue packing their belongings, at which point Holcomb continued to be belligerent and uncooperative. (Doc. 21 at ¶ 25). Holcomb was ultimately charged with, and found guilty of, disorderly conduct and obstructing a peace officer. (Doc. 21 at ¶¶ 27-28).

Holcomb does not challenge her arrest or claim excessive use of force during this incident but rather alleges that Officers "failed to stop thieves from

---

2 The following facts are taken from the declaration of Officer Timothy Cronin. (Doc. 21 at ¶¶ 21-29, citing Doc. 21 at 38-39). Holcomb has not submitted any declarations, affidavits, or other evidence in support of her claims and in opposition to summary judgment.

robbing my business and allowed them to take my car and my generator and tools." (Doc. 2 at 6). This claim sounds in negligence and is barred by the public duty doctrine.

"The public duty doctrine, a rule of common law negligence, provides that a law-enforcement officer does not owe a legal duty to an individual plaintiff where the plaintiff alleges he suffered harm from the officer's breach of the general duty to protect and preserve the peace." *Renenger v. State*, 426 P.3d 559, 567 (Mont. 2018). The public duty doctrine focuses on claims that "officers allegedly breached a duty to protect the victim from outside or third-party harm," *Basset v. Lamantia*, 417 P.3d 299, 307 (Mont. 2019), and applies unless there is "a special relationship between the police officer and an individual." *Nelson v. Driscoll*, 983 P.2d 972, 978 (Mont. 1999). Here, Holcomb's claim is essentially that Officers breached a general duty to preserve the peace and failed to protect her from third-party thieves who stole from her business. Accordingly, and because there is no evidence of a special relationship, Holcomb's claim is barred by the public duty doctrine.

      3.    Third Incident[3]

---

[3] The following facts are taken from the declaration of Officer Cale Vukonich. (Doc. 21 at ¶¶ 29-36, citing Doc. 21 at 61-62). Holcomb has not submitted any declarations, affidavits, or other evidence in support of her claims and in opposition to summary judgment.

The third alleged incident took place on the afternoon of March 20, 2024, when Holcomb was removed from her car for a missing front plate. (Doc. 2 at 6). Officer Cale Vukonich observed a vehicle with no front license plate, in violation of Mont. Code Ann. § 61-3-301. (Doc. 21 at ¶¶ 29, 30). Officer Vukonich conducted a traffic stop. (Doc. 21 at ¶ 32). He had previously observed the vehicle at a residence known for drug activity. (Doc. 21 at ¶ 33). Holcomb, who was identified as the driver, had caution for mental health and carrying a handgun, and the front passenger had cautions for drugs, assault and carrying a loaded 9mm. (Doc. 21 at ¶¶ 34-35). For officer safety, Officer Vuconich had both occupants exit the vehicle. (Doc. 21 at ¶ 36).

Holcomb does not claim that the traffic stop was improper, but rather that Officer Vukonich removed her from the vehicle. (Doc. 2 at 6). However, "a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997); *see also United States v. Moore*, 2023 WL 6937414, at *2 (9th Cir. Oct. 20, 2023) ("because a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle, [the officer] acted lawfully by ordering [the defendant] out of his car"). Because the undisputed evidence of record establishes that Officer Vukonich lawfully required Holcomb and the other occupant to exit the vehicle as part of the traffic stop, Holcomb's claim fails as a matter of law.

19

#### 4.      Fourth Incident

As to the fourth incident, Holcomb alleges that Officers refused to respond to her 911 call for assistance when "my business landlord sent in goon[s] to break in and lock me out." (Doc. 2 at 6). Defendants state that they have been unable to locate any incidents that Holcomb could be referring to. (Doc. 22 at 22). But regardless, any claim that Officers failed to respond to her call for assistance addressed a breach of the general duty to protect and preserve the peace and is barred by the public duty doctrine.

To the extent Holcomb claims that Officers violated her Equal Protection rights during the incidents upon which her Complaint is based, her claims fail as a matter of law. (Doc. 2 at 4). "To prevail on an equal protection claim under the Fourteenth Amendment, a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Lacey v. Maricopa County*, 693 F.3d 896, 920 (9th Cir. 2012) (citing *Rosenbaum v. City & County of S.F.*, 484 F.3d 1142, 1152 (9th Cir. 2007)). Holcomb does not allege any facts demonstrating that unidentified Officers acted with a discriminatory purpose based her gender or membership in any other protected class.

## IV.   Conclusion

20

For the reasons discussed above, Holcomb's § 1983 claims fail as a matter of law and her remaining claims, which sound in negligence, are barred by the public duty doctrine. Accordingly,

IT IS ORDERED that the City of Kalispell's Motion for Summary Judgment (Doc. 20) is GRANTED, Holcomb's Motion to Compel (Doc. 28) is DENIED, and this case is dismissed.

DATED this 19th day of May, 2026.

_____
Kathleen L. DeSoto
United States Magistrate Judge

21